## McMullin Enterprises, Inc. v. Altemose Construction Company

David S. Foulke, for plaintiff.

H. Kenneth Butera, for defendant.

SMILLIE, J., October 23, 1968.—The matter herewith comes before the court on the petition of McMullin Enterprises, Inc., to vacate or in the alternative to modify or correct an award of arbitrators and to open and/or strike judgment. The petitions were dismissed by orders of the court en banc, dated June 28, 1968.

The facts are as follows:

On August 11, 1965, Altemose Construction Company and McMullin Enterprises, Inc. entered into a contract under which Altemose was to build a restaurant and motel known as the Tankard Inn for McMullin in West Conshohocken, Pennsylvania, for $125,000.

The contract was the standard form of agreement between owner (McMullin) and contractor (Altemose) prepared by the American Institute of Architects. The standard form contract incorporates by reference the general conditions of the contract for the construction of buildings. Among the general conditions, and part of the contract, is a clause providing for arbitration of contractual disputes, as follows:

"All disputes, claims or questions subject to arbitration under the Contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects, and the Agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other".

The agreement further provided that "final payment shall be due 30 days after substantial completion of the work provided the work be then fully completed and the contract fully performed". (Article 5 of the standard form).

Altemose substantially completed work on the building on December 4, 1965, 14 days ahead of schedule and the Tankard Inn was opened for business by McMullin on December 8, 1965.

A few days after Altemose notified McMullin that the building had been completed, Robert F. Linden, McMullin's architect, prepared a checklist of minor items that were not yet completed. The insignificant irregularities were completed or repaired by Altemose, but later in December, Roger Altemose, one of the owners of the business, was notified by Mr. Linden that the roof leaked in several places. Altemose tried un-

successfully to repair the roof leakage, which was of such small proportions that three or four hours of rain would result in dampness that could be easily sponged away.

While the leak never caused the Tankard Inn to cease operations, McMullin claimed the water leakage and several other minor construction defects gave him the right to refuse payment of the last instalment of the contract price of $12,500.

After five months of unsuccessfully demanding payment of the last instalment from McMullin, Roger Altemose went to the Tankard Inn on Sunday, June 19, 1966, when the establishment was closed, and removed three air conditioner compressors. The following day, Altemose called McMullin and informed him that he would not return the air conditioning units unless McMullin directed the bank to release the funds owed Altemose under the contract. McMullin continued to resist payment, and obtained a writ of replevin for the three compressors. A search by the sheriff of Montgomery County of the Altemose office and warehouse failed to uncover the units, and McMullin subsequently purchased three replacements.

Having failed to resolve the dispute, Altemose on July 14, 1966, filed a complaint in equity, asking the court to "order defendant to name an arbitrator and to proceed diligently under the compulsory arbitration provisions" of the contract. McMullin's preliminary objections were sustained by the Honorable Robert W. Honeyman, who directed by order dated October 21, 1966 that the action be certified over to the law side of the court. Altemose took no further steps, however, to advance the prosecution of the suit.

During the pendency of the equity proceeding, Altemose again attempted to repair the leaking roof. In August, 1966, Altemose hired a new roofing subcontractor who tore up portions of the old roof with jack-

hammers and installed new roofing material. The new roof continued to leak and McMullin continued to resist payment. Finding resolution of the contractual dispute impossible, Altemose, on January 31, 1967, instituted a proceeding before the American Arbitration Association to seek recovery of $13,390.10, due under the contract. McMullin resisted the demand for arbitration, contending that the matter was not arbitrable for the following reasons:

1. Court action was still pending;

2. Altemose had abrogated the arbitration clause by its breach of contract in removing the three air conditioning units from the Tankard Inn.

The American Arbitration Association, after reviewing the contentions of the parties, ruled that an issue as to arbitration existed which must be determined by an arbitrator. Pursuant thereto, the association scheduled a hearing on June 15 and 16, 1967, before an arbitration panel of S. Harry Galfand, attorney; J. Frank Haws, architect; and Paul Restall, general contractor.

At the hearing, McMullin again pressed his contention that the matter was not arbitrable but, in the event that the arbitrators found to the contrary, advanced a counterclaim for expenses and losses by reason of Altemose's alleged nonperformance of the contract.

Following four hearings, during which almost six hundred pages of testimony were taken, the arbitrators, on December 29, 1967, found that the matter was arbitrable and awarded Altemose the sum of $12,757.10, plus interest thereon at the rate of six percent per year from January 4, 1966. The counterclaim of McMullin was denied in its entirety.

On January 29, 1968, McMullin filed a petition for order vacating or in the alternative modifying or correcting an award of arbitrators. On February 1, 1968, the prothonotary, upon praecipe, entered judgment in

favor of Altemose for $14,469.09, rendering moot Mc-Mullin's original petition to vacate the arbitration award. Five days later, McMullin filed a petition to open or strike the aforesaid judgment.

The basis of McMullin's attack upon the judgment is the argument he has advanced throughout the proceeding—that the arbitrators were without jurisdiction. McMullin contends that Altemose effected a waiver of the arbitration clause of the contract by engaging in acts inconsistent with arbitrability. More particularly, it is alleged that Altemose, by its breach of contract in entering the premises of McMullin, and without authorization removing the three compressors, engaged in conduct so antithetical to the contract as to preclude Altemose from taking advantage of the arbitration clause of the contract.

Both parties agree that the arbitration provision in the contract dictates arbitration at common law rather than statutory arbitration.

Common law arbitration award may be vacated only where the appellant shows "by clear, precise and indubitable evidence that he was denied a hearing, or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable and unconscionable award, the arbitrator being the final judge of both law and fact, his award not being subject to disturbance for a mistake of either": Harwitz v. Selas Corporation of America, 406 Pa. 539 (1962).

It is clear that McMullin, not having alleged fraud, corruption or other irregularity, can only open the judgment by an attack on the jurisdiction of the arbitrators.

The dispute was properly before the arbitrators. Article 39 of the general conditions specifies that the architect shall "make decisions on all claims of the

Owner or Contractor and on all other matters relating to the execution and progress of the work or the interpretation of the Contract Documents". Article 39 further provides that, with the exception of matters relating to artistic effect, all of the architect's decisions are subject to arbitration. What was in issue before the arbitration panel was the refusal of architect Linder to issue the final certificate stating that the work provided for in the contract had been completed—manifestly an architect's decision subject to the arbitration clause stated above.

McMullin's argument that Altemose lost its right to proceed under the arbitration clause by reason of its conversion of McMullin's compressor flies in the face of the purpose of arbitration, which is the expeditious resolution of disputes between parties to a contract without resort to court.

It is obvious that the ousting of the jurisdiction of an arbitration panel by virtue of one party's breach would result in arbitration being rarely used. There would be few contractual disputes, were it not for the fact that one party thinks the other has committed a breach. In the case before us, Altemose argues that McMullin has breached the contract by refusing to pay the last installment on the contract price. McMullin contends Altemose breached by constructing the building improperly. Determination of which breach created the dispute and the issue, being technical, logically falls into arbitration by experts in their fields.

In the recently decided case of Harleysville Mutual Insurance Company v. Medycki, 431 Pa. 67 (1968), the Supreme Court decided a situation closely analogous to the case at bar, although it was limited in scope to the "uninsured motorist coverage" issue. In that case, the appellant insurance company argued that the insured appellee had barred himself from his right to arbitrate any questions under his uninsured motorist's

coverage by his failure to disclose to the appellant any of the information it had required or to comply with any of the contract conditions. The American Arbitration Association decided to entertain and consider the issue of disclaimer of coverage. The Supreme Court, in Harleysville, supra, affirmed the arbitrators' right to resolve the issue, stating:

". . . 'We believe that the policy language expresses an agreement of the parties to submit the "matter or matters" in dispute between them, relative to the protection against uninsured motorists provisions of the policy, to determination by arbitration. *The arbitration clause, in our view, indicates that the parties contemplated one method, and one method only, for the resolution of disputes under this coverage.* That method was arbitration, and all such disputes should be so decided'. We here reaffirm our position that all disputes arising under the uninsured motorists coverage are covered by the arbitration agreement". (Italics supplied.)

And again:

"The dispute which the arbitrator will be required to determine is whether the insured has forfeited his right to the protection which the policy provides by virtue of some noncompliance with provisions of the policy".

So, too, in the case at bar the arbitrator had jurisdiction to decide if Altemose had disqualified itself from the arbitration clause as well as the issue of the "substantial completion of the work". McMullin appeared and testified in a number of hearings in arbitration and, when the issues were decided against him, repeated his contention that the arbitrators were without jurisdiction. The time consuming procedure enabled McMullin to retain $13,000 more or less of Altemose's money yet enjoy the benefits of the contractor's

work. As the Supreme Court said in Harleysville, supra:

"If arbitration is the format in which the parties have agreed to settle their dispute, then they must be content with such a settlement".

There is no doubt that the contract between McMullin and Altemose provided arbitration procedure as the *only* course to be pursued by the parties to settle *any* and *all disputes* and "questions". In order to make it "positively-absolutely", the contract added:

". . . the decision of the arbitrators shall be a condition precedent *to any right of legal action* that either party may have against the other".

So, Altemose could not proceed by way of replevin for adjustment of his claim for the balance of his contract money, but was forced to either take matters in his own hands or proceed to arbitration. Altemose did both but the arbitrators had all the facts when they rendered a decision and both parties had ample opportunity to fully explore the effective arguments available.

Perhaps McMullin contends that when selfhelp is employed to illegally remove property, it is sufficient to preclude arbitration. Criminal action would lie for an illegal entry or conversion. It is a separate proceeding controlled by different rules of law and an entirely different burden of proof. The parties, too, are different. The Commonwealth has an interest when a crime is committed and does not control the civil results of the commission of the crime even if it may influence both outcomes.

The thesis advanced by McMullin is repugnant to the object of arbitration — rapid and expert solutions to contractual disputes.

McMullin has attempted to delay every attempt by Altemose to bring the dispute to a conclusion. McMullin filed preliminary objections to Altemose's initial

proceeding in equity; he objected to the arbitration panel proceeding to the merits of the dispute until the question of arbitration was decided; and, now, he seeks to open the judgment by attacking the jurisdiction of the arbitrators. For two and one-half years, McMullin has been operating his business without having paid the remaining ten percent due under the contract. The construction defects were not so severe as to force McMullin to close or even lose business. The arbitration panel determined that it was time that McMullin paid for what he contracted because, according to the arbitrators, he received substantially all to which he was entitled.

The arbitration award was entered pursuant to the contractual agreement of the parties. Accordingly, the petitions to vacate the arbitrator's award and to open the judgment are dismissed.